## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

**STEVE PRINCE**

      **Plaintiff,**

**v.**                                                   **CV 06-PT-691-E**

**WARREN HARRIS; DAVID
DUSHAUN;  and JACOB
FREEMAN**

      **Defendants.**

### MEMORANDUM OPINION

This cause comes on to be heard on Defendants' Motion for Summary Judgment filed on March 29, 2007.

The plaintiff has conceded that he does not have Eighth and Fifth Amendment claims, nor a § 1983 deliberate indifference to medical needs claim.[1]  The only purported claim(s) remaining for further consideration are: (1) a 14th Amendment substantive due process claim related to the alleged failure of the officers dispatched to the scene to protect him from harm by private (not law enforcement) parties on private property;[2] and, (2) a claim of false arrest under the 4th Amendment.

### Undisputed Facts

The plaintiff was involved in an altercation (apparently a continuing feud) with his Allen neighbors.  After a called in report of the altercation, police officers Warren Harris, David

---

[1]The delay in being taken by ambulance was minimal.   See recorded telephone discussion.

[2]Apparently the plaintiff has argued that the failure to protect claim is a Fourth Amendment claim rather than a Fourteenth Amendment substantive due process claim.  The court will assume that it is the latter, if anything.

DeShon (Deshaun) and Jacob Freeman were dispatched to the scene of the altercation at approximately 3:00 p.m. on January 22, 2005.

Plaintiff's Version of the Facts

*See* attached affidavits of plaintiff and his wife and David Bundrum, Jr.

Defendants' Version of the Facts

*See* attached Affidavits of defendants Harris, Deshon (Dushaun) and Freeman.

Discussion

The plaintiff's claims are (1) substantive due process claim for failure to protect; (2) unreasonable seizure (false arrest).

Failure to Protect

The required initial analysis is prescribed by *Saucier v. Katz,* 533 U.S. 194 (2001). This court must first determine if the alleged conduct violates a constitutional right. There is a reasonable argument that if police officers are dispatched to the scene of a reported altercation, they have a special relationship and responsibilities, and the persons involved in the altercation thus have a special right to be protected. Such officers are called for, *inter alia*, the specific purpose of protection. This argument, however, has been clearly foreclosed by *DeShaney v. Winnebago County Dep't of Special Services, et al,* 489 U.S. 189 (1989).

The Court stated:

> The [Due Process] Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. Nor does history support such an expansive reading of the constitutional text.

2

*Id.* at 195.

The Court further stated:

> ...As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.

*Id.* at 197.

. . . .

Citing earlier cases, the Court stated:

> But these cases afford petitioners no help. Taken together, they stand only for the proposition that when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility to his safety and general well-being.

*Id.* at 199-200.

. . . .

The Court further stated:

> In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf--through incarceration, institutionalization, or other similar restraint of personal liberty--which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interest against harms inflicted by other means.

*Id.* at 200.

The Court added:

> Judges and lawyers, like other humans, are moved by natural sympathy in a case like this to find a way for Joshua and his mother to receive adequate compensation for the grievous harm inflicted upon them. But before yielding to that impulse, it is well to remember once again that the harm was inflicted not by the State of Wisconsin, but by Joshua's father. The most that can be said of the state functionaries in this case is that they stood by and did nothing

3

when suspicious circumstances dictated a more active role for them.

*Id*. at 202-203.

. . . .

The Court further stated:

> The people of Wisconsin may well prefer a system of liability which would place upon the State and its officials the responsibility for failure to act in situations such as the present one. They may create such a system, if they do not have it already, by changing the tort law of the State in accordance with the regular lawmaking process. But they should not have it thrust upon them by this Court's expansion of the Due Process Clause of the Fourteenth Amendment.

*Id*, at 203.[3]

In light of *DeShaney*, this court cannot hold that the alleged failure to protect violated a Constitutional right under the Fourteenth Amendment.[4] *See also Collins v. City of Harker Heights*, 503 U.S. 115 (1992) and *White v. Lemacks*, 183 F.3d 1253, 1257-1259 (11th Cir. 1999).[5] *See also Williams v. City of Montgomery*, 21 F. Supp. 2d 1360 (M.D. Ala. 1998), aff'd without opinion, 200 F.3d 821 (11th Circ. 1999). *Compare also Breen v. Texas A & M Univ.*, ____ F.3d _____ (5th Cir. 2007).

This court will, in the alternative, discuss qualified immunity.[6]

The United States Court of Appeals for the Eleventh Circuit addressed the issue of qualified

---

[3] See other quotes in *DeShaney*.

[4] The court understands that plaintiff is a white male. There has been no suggestion that the plaintiff is in a "disfavored minority." See *DeShaney*, 489 U.S. at 197 n.. 3.

[5] The latter case perhaps overruling a portion of *Cornelius v. Town of Highland Lake*, 880 F.2d 348 (11th Cir. 1989).

[6] This discussion, of course, has no application unless an appellate court determines that there has been sufficient evidence of Constitutional violation.

4

immunity in *Evans v. Stephens*, 407 F.3d 1272, 1283 (11th Cir. 2005) (en banc).  There the court

stated:

> Qualified immunity, however, does not shield Stephens from Plaintiffs' separate claim that the manner of the strip search violated their rights under the Fourth Amendment.  No preexisting case law established this violation or made it obviously clear.
>
> . . . .
>
> Every objectively reasonable officer would have known that, when conducting a strip search, it is unreasonable to do so in the manner demonstrated by the sum of the facts alleged by Plaintiffs. The totality of the facts alleged here made this violation-on the date of the search-clear from the terms of the Constitution itself:  No objectively reasonable policeman could have believed that the degrading and forceful manner of this strip search (especially in the light of the complete lack of circumstances that might have called for immediate action to conduct a search without the time for cool and calm thought about how to proceed) was "reasonable" in the constitutional sense.

*See also Hope v. Pelzer*, 536 U.S. 730 (2002) and *Priester v. City of Riviera Beach,* 208 F.3d 919,

926 (11th Cir. 2000).

If there were a Constitutional violation, this court would hold that the alleged conduct of the

defendants with regard to protection is shocking to the conscience and arbitrary.[7]  However, after

considering *DeShaney* and other cited cases, this court cannot determine that the law was clearly

established on or about January 2005 that police officers have a Constitutional duty to protect private

citizens against the violence of other private citizens.  For a general discussion see Licia A. Esposito

Eaton, Annotation, *Liability of Municipality or Other Governmental Unit for Failure to Provide*

*Police Protection for a Crime*, 90 A.L.R. 5th 273 (2007).  This discussion further suggests that the

---

[7]This court does not suggest that plaintiff's allegations appear to be credible.

law is not clearly established.  For a recent Eleventh Circuit case discussing qualified immunity, *see*

*McClish v. Nugent*, _____ F.3d _____ (11th Cir. 2007).

Unlawful Arrest

It is unquestionable that the Fourth Amendment prohibits an arrest without probable

cause.  The first *Saucier* step is satisfied.  On the other hand, Officer Freeman had a reasonable

basis for restraining the plaintiff.  There had been an ongoing altercation.  Freeman certainly had

a reasonable basis for at least temporarily restraining the plaintiff.  It was likely wise to separate

and temporarily restrain the combatants.  In any event, a reasonable police officer could think so.

According to the plaintiff, the fighting continued after the policemen arrived.  The fact that other

officers may not have arrested the Allens is immaterial.  Freeman is entitled to qualified

immunity on this claim.

This the 15th day of May, 2007.

_____

**ROBERT B. PROPST**<br>
**SENIOR UNITED STATES DISTRICT JUDGE**

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA, EASTERN DIVISION

Steve PRINCE                  )
                                      )
       Plaintiff               )
v.                              ) Case No: 1:06-cv-691-RBP
                                        )
Warren HARRIS             ) District Judge Robert B. Propst
David DESHON              )
Jacob FREEMAN            )
                                      )
       Defendants          )

## AFFIDAVIT OF DAVID DESHON

STATE OF ALABAMA        )
COUNTY OF CALHOUN     )

Before me, a notary public in and for the Calhoun County, State of Alabama, personally appeared David DeShon, who is known to me, and being by me duly sworn, deposes and says:

I am employed as a police officer and chaplain for the City of Jacksonville's Police Department. I am over the age of 19 years, and I am competent to make this affidavit, which is based upon my personal knowledge and Jacksonville Police Department records.

Near 3:00 p.m. on January 22, 2005, I responded to a disturbance call that was occurring at 1710 Upper White's Gap Road, the home of the Allens. The dispatcher relayed that there was a family fight going on and that someone had been stabbed. I was a supervisor for the second shift. When I arrived, I saw that Sergeant Warren Harris of the first shift had arrived and was between two groups of people on the Allen property. Officer Jacob Freeman of the second shift arrived shortly after I did.

The first group were the Allens, including Crystal Allen Jones, Eugene Allen, William Allen, and Michael Allen. They told me that Steve Prince came onto their property and tried to stab William Allen, who was approximately 70 years old. They said that Mr. Prince had a knife and a long (approx. 5 ft.) wire-wrapped stick. Because Sergeant Harris was already dealing with the Allens, Officer Freeman and I went to talk to the other group, Steve and Tamara Prince. I have been out to the Prince residence on several different occasions responding to reports of Mr. Prince being involved in domestic violence against his wife and his children. One time, Mr. Prince's young boys told me that Mr. Prince had hit them with a 2x4.

On the date of the incident in question, Mr. Prince told me that the Allens crossed a yellow piece of tape that served as the property line and that the Allens "beat my ass." Based on talking with everyone, I believed Mr. Prince to be the primary aggressor, mostly because the fight happened on the Allen property. However, no arrests were made because nothing happened in our presence. I told

1

the Allens and the Princes that if they wanted to press charges that they should go to the Police Department to make their statements and complaints.

The ambulance arrived shortly after we did, and the EMTs began to treat William Allen. Mr. Prince came up to me and asked me whether I thought he ought to go to the hospital. I told him that he needed to go to the hospital to get checked out. I did not tell him that he could not go in the ambulance, but I did tell him that it would be cheaper if he went in his own vehicle.

FURTHER AFFIANT SAITH NOT.

_David DeShon_
David DeShon

STATE OF ALABAMA            )
COUNTY OF CALHOUN           )

Before me, a notary public, in and for said county and state, personally appeared David DeShon, and after being first duly sworn, did state that he has read the above and foregoing, and executed the same of his own free will and under oath.

Sworn to and subscribed this 17th day of March, 2007.

NOTARY PUBLIC
Commission Expires : 1/24/2010

2

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ALABAMA, EASTERN DIVISION**

| | |
|---|---|
| Steve **PRINCE** | ) |
| | ) |
| Plaintiff | ) |
| **v.** | ) Case No: 1:06-cv-691-RBP |
| | ) |
| Warren **HARRIS** | ) District Judge Robert B. Propst |
| David **DUSHAUN** | ) |
| Jacob **FREEMAN** | ) |
| | ) |
| Defendants | ) |

<u>**AFFIDAVIT OF WARREN HARRIS**</u>

| | |
|---|---|
| STATE OF ALABAMA | ) |
| COUNTY OF CALHOUN | ) |

Before me, a notary public in and for the Calhoun County, State of Alabama, personally appeared Warren Harris, who is known to me, and being by me duly sworn, deposes and says:

I am employed as a police sergeant for the City of Jacksonville's Police Department. I am over the age of 19 years, and I am competent to make this affidavit, which is based upon my personal knowledge and Jacksonville Police Department records.

On January 22, 2005, I worked as the sergeant of the first shift, which operated from 7:00 a.m. to 3:00 p.m. At the shift change (*i.e.* 3:00 pm), I heard a call over dispatch that a knife fight was in progress at 1710 White's Gap Road, which is outside the city limits but within the police jurisdiction. This residence was owned by the Allens. Steven and Tamara Prince lived next door. I and other Jacksonville police officers had been to the Prince residence many times to investigate domestic violence complaints leveled at Mr. Prince. Because some of the second shift units were already occupied with other matters, I proceeded to the scene to back-up the unit that was dispatched. I got there just before they did.

While I was pulling my police car to a stop, I saw what appeared to be two men rolling-around on the ground on the Allen lot and family members pulling them apart. As I was running towards them, I saw one of the men, Mr. Prince, being pulled back towards his home by Ms. Prince. The other man, Michael Allen, was being pulled in the other direction by his family, which included William Wayne Allen, Eugene Allen, and Crystal Allen Jones. In other words, by the time that I physically got to the scene of the fight, the fight had ended and the participants had already separated themselves.

Officers David Dushaun and Jacob Freeman, who were on the second shift, arrived within seconds after I did. A minute or so after Officers Dushaun and Freeman arrived, an ambulance that had been called to the scene arrived.

1

Officers Dushaun and Freeman talked with the Princes, and I talked with the Allens. Because we did not see who was the aggressor and all the statements from the witnesses conflicted, we decided to not make any arrests, but we apprized the Allens and the Princes that they could come to the station and make criminal complaints against whomever they believed violated the law if they so desired. The EMT was specifically there to provide medical care to the participants, and we encouraged the participants to be treated and to go to the hospital.

FURTHER AFFIANT SAITH NOT.

**Warren Harris**

STATE OF ALABAMA
COUNTY OF CALHOUN                    )

Before me, a notary public, in and for said county and state, personally appeared Warren Harris, and after being first duly sworn, did state that he has read the above and foregoing, and executed the same of his own free will and under oath.

Sworn to and subscribed this 14th day of March, 2007.

**NOTARY PUBLIC**

My Commission Expires
June 8, 2010

2

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ALABAMA, EASTERN DIVISION**

| | |
|---|---|
| Steve **PRINCE** | ) |
| | ) |
| Plaintiff | ) |
| v. | ) Case No: **1:06-cv-691-RBP** |
| | ) |
| Warren **HARRIS** | ) District Judge Robert B. Propst |
| David **DUSHAUN** | ) |
| Jacob **FREEMAN** | ) |
| | ) |
| Defendants | ) |

**AFFIDAVIT OF JACOB FREEMAN**

STATE OF ALABAMA        )
COUNTY OF CALHOUN      )

Before me, a notary public in and for the Calhoun County, State of Alabama, personally appeared Jacob Freeman, who is known to me, and being by me duly sworn, deposes and says:

I am employed as a police officer for the City of Jacksonville's Police Department. I am over the age of 19 years, and I am competent to make this affidavit, which is based upon my personal knowledge and Jacksonville Police Department records.

On January 22, 2005, I responded to a dispatch call of a fight in progress at 1710 White's Gap Road, which is outside the city limits but within the police jurisdiction. Upon my arrival, the fight had already ceased, and Sergeant Warren Harris, who was already there, had separated the participants into two groups. One of the groups, Steven and Tamara Prince, were walking towards Officer David Dushaun, who got there immediately before I did. An ambulance arrived within a minute or so after I arrived.

Mr. Prince was still a little belligerent. He told Officer Dushaun and I that he had gotten beaten-up by the other group, the Allens, to whom he was related. Mr. Prince also told us that he had cut the car of one of the Allens. The Princes lived next door, but the fight happened on the Allens property.

We asked Mr. Prince if he wanted medical treatment because we already had an ambulance en route to the scene. Officer Dushaun specifically told him that he needed "to go to the hospital to get checked out." He told Mr. Prince that he can take the ambulance or go in a private vehicle, but going by private vehicle would be cheaper.

We made no arrests because we did not see any fighting, but we told everyone that they could swear-out warrants at the police station if they so chose.

1

I was later called to the hospital because of continued arguments between the Princes and the Allens. Ms. Prince wanted the Allens to leave the hospital without getting medical attention. I told her that the hospital served the public and that I could not refuse the Allens medical treatment.

FURTHER AFFIANT SAITH NOT.

Jacob Freeman

STATE OF ALABAMA          )
COUNTY OF CALHOUN       )

Before me, a notary public, in and for said county and state, personally appeared Jacob Freeman, and after being first duly sworn, did state that he has read the above and foregoing, and executed the same of his own free will and under oath.

Sworn to and subscribed this 12th day of March, 2007.



NOTARY PUBLIC

My Commission Expires
June 6, 2010

2

# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE NORTHERN DISTRICT
## EASTERN DIVISION

STEVE PRINCE,                        )
    Plaintiff,                       )
                       )
          v.                          )      **CASE NO.: 1:06-cv-0691-RBP**
                       )
SERGEANT WARREN HARRIS, )
OFFICER DAVID DESHON, and  )
OFFICER JACOB FREEMAN,      )
    Defendants.                      )

## DECLARATION OF TAMERA HAYNES PRINCE

"My name is Tamera Haynes Prince.  I am married to Steve Prince, the plaintiff in the above-styled case.  I have personal knowledge of the facts asserted herein.

1.      "On January 22, 2005, at approximately 2:30 p.m., my husband was involved in a physical altercation with several individuals, including William Wayne Allen, Michael Wayne Allen, Crystal Marie Allen and Elbert Eugene "Gene" Allen.  The altercation took place at our home at 1710 White's Gap Road, Jacksonville, Alabama.

2.      "Michael Wayne Allen was arguing with my husband.  Then I saw him attack my husband.  Michael Wayne Allen used an iron pipe to strike my husband about his head and legs.  Thereafter, my husband was continually attacked by the

1

EXHIBIT
B

four Allens.

3.    "My husband contacted emergency services requesting the police before the physical fight began.  I called emergency services when Wayne Allen was joined by the rest of his family.  A neighbor called for emergency services including police and an ambulance while the fight was going on.

4.    "During the attack, all three defendants, members of the City of Jacksonville Police Department arrived.  Sergeant Warren Harris arrived first in his police car.  Officer Jacob Freeman and Officer David DeShon arrived shortly after Harris.  Each defendant arrived in his own police car.

5.    "When Sergeant Harris arrived at the scene, he proceeded to get out of his police car and leaned on the hood of the car.  Sergeant Harris watched the attack on my husband for approximately five to seven minutes.  Sergeant Harris arrived in the middle of the fight.  Sergeant Harris did not intervene and/or break up the fight.  Sergeant Harris was laughing and/or smiling while he watched the fight.

6.    "When Officer Freeman arrived at the scene, he proceeded to get out of his vehicle and just stand there (next to his police car).  Officer Freeman watched the attack on my husband for approximately five to seven minutes.  Officer Freeman arrived during the middle of the fight.  Officer Freeman did not intervene and/or break up the fight.

2

7.    "When Officer DeShon arrived at the scene, he proceeded to get out of his

vehicle and just stand there (next to his police car). Officer DeShon watched the

attack on my husband for approximately five to seven minutes. Officer DeShon

arrived during the middle of the fight. Officer DeShon did not intervene and/or

break up the fight.

8.    "After the police arrived, my husband was further injured when one of the

Allens stabbed him in the mouth. The Allens continuously attacked my husband

while the police officers watched without lending assistance.

9.    "I did not hear any of the police officers say anything while they watched

the fight.

10.   "My neighbor, Earl Storey, broke the fight up.

11.   "Once the fight was broken up, I went to my husband, got him up to his feet

and was trying to help him walk to an ambulance that had arrived. The ambulance

was parked on the side of the road, not in our driveway. The ambulance was on

the road because the police cars were blocking the driveway. On the way to the

ambulance, my husband and I walked past Officer Freeman's police car. Officer

Freeman stopped us. Officer Freeman tried to get our identification. Freeman

tried to get my husband into his police car, telling him, "Sit down, you're not hurt,

you're not hurt."

3

12.    "After I gave Officer Freeman my driver's license, he threatened to arrest me for giving him false information. I gave Officer Freeman my married name, but my driver's license has my maiden name on it.

13.    "Finally, the ambulance driver interrupted Officer Freeman, telling him, "Look, Prince is hurt. I'm taking him to the hospital.

14.    "The ambulance then took my husband to the hospital."

Pursuant to 28 U.S.C.A.§ 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _____5^TH_____ day of ~~March~~ April, 2007.

*Tamera Haynes Prince*

TAMERA HAYNES PRINCE

4

## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE NORTHERN DISTRICT
## EASTERN DIVISION

STEVE PRINCE,              )
    Plaintiff,             )
                        )
        v.                     )    **CASE NO.: 1:06-cv-0691-RBP**
                        )
SERGEANT WARREN HARRIS,    )
OFFICER DAVID DESHON, and  )
OFFICER JACOB FREEMAN,     )
    Defendants.            )

## DECLARATION OF DAVID BUNDRUM, JR.

"My name is David Bundrum, Jr. I witnessed the incident which gave rise

to the above-styled lawsuit. I have personal knowledge of the facts asserted

herein.

1.    "On January 22, 2005, at approximately 2:30 p.m., while I was walking

from Plaintiff Steve Prince's home (1710 White's Gap Road, Jacksonville,

Alabama) to Earl Storey's home to go fishing, I witnessed Michael Wayne Allen

start a physical fight with the plaintiff.

2.    "The fight lasted about twenty-five minutes. The other individuals involved

in the fight included William Wayne Allen, Michael Wayne Allen, Crystal Marie

Allen, Elbert Eugene "Gene" Allen, and Janice Allen. The fight took place

outside Plaintiff's home.

1



EXHIBIT

C

3.      "I heard Michael Wayne Allen tell Plaintiff that he was going to kill him.

4.      "While the fight was going on, I was approximately ten to fifteen feet away from it.

5.      "During the attack, all three defendants, members of the City of Jacksonville Police Department, arrived.  Sergeant Warren Harris arrived first in his police car. Officer Jacob Freeman and Officer David DeShon arrived shortly after Harris, approximately 40-60 seconds apart, each defendant in his own police car.

6.      "When Sergeant Harris arrived at the scene, he proceeded to get out of his police car and leaned on the hood of the car.  Sergeant Harris watched the attack on the plaintiff for approximately ten minutes.  Sergeant Harris arrived in the middle of the fight.  Sergeant Harris did not intervene and/or break up the fight. Sergeant Harris was laughing and/or smiling while he watched the fight.  I heard Sergeant Harris talking and laughing to Officer Freeman.  I heard Harris say to Freeman, 'That's what that prick needs.'  Harris and Freeman were pointing their fingers at the fight while talking and laughing.

7.      "When Officer Freeman arrived at the scene, he proceeded to get out of his vehicle and just stand there (next to his police car).  Officer Freeman watched the attack on the plaintiff for approximately 9-10 minutes.  Officer Freeman arrived during the middle of the fight.  Officer Freeman did not intervene and/or break up

2

the fight.

8.    "When Officer DeShon arrived at the scene, he proceeded to get out of his vehicle and just stand there (next to his police car). Officer DeShon watched the attack on the plaintiff for approximately 8-9 minutes. Officer DeShon arrived during the middle of the fight. Officer DeShon did not intervene and/or break up the fight.

9.    "I saw one of the Allens hit the plaintiff with some kind of handle, perhaps from a sledgehammer. I saw the Allens beat the plaintiff over his face, legs and arms. Crystal Marie Allen tried to stab the plaintiff in the face. She ended up cutting her father instead. Plaintiff was later stabbed in the mouth area during the fight.

10.    "I saw Earl Storey, a neighbor of the plaintiff, break the fight up.

11.    "A fourth law enforcement officer then showed up after Earl Storey had stopped the fight. I believe he was a county law enforcement officer and not from the City of Jacksonville Police Department. When this last officer arrived, he went down to the scene of the fight. This fourth officer asked the plaintiff if he was okay. The plaintiff told him he needed to go to the hospital.

12.    "Once the fight was broken up, I was next to the plaintiff almost the entire time. On the way to the ambulance, Officer Freeman tried to put the plaintiff in

3

his police car. The plaintiff told Freeman he could not sit down. His leg was swelled up to approximately the size of a basketball. The three defendants would not put the plaintiff in an ambulance. Freeman just kept trying to get the plaintiff in his police car.

13.   "Officer Freeman asked the plaintiff's wife for identification. After Mrs. Prince gave Officer Freeman her driver's license, he threatened to arrest her for giving him false information. The name on her driver's license has her maiden name, and she had given Officer Freeman her married name.

14.   "The ambulance then took the plaintiff to the hospital."

Pursuant to 28 U.S.C.A. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___28___ day of March, 2007.

_David W Bundrum Jr._
DAVID BUNDRUM, JR.

4

## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE NORTHERN DISTRICT
## EASTERN DIVISION

STEVE PRINCE,                    )
    Plaintiff,                    )
                 )
        v.                    )          CASE NO.: 1:06-cv-0691-RBP
                 )
SERGEANT WARREN HARRIS,    )
OFFICER DAVID DESHON, and  )
OFFICER JACOB FREEMAN,     )
    Defendants.                    )

## DECLARATION OF STEVE PRINCE

"My name is Steve Prince.  I am the plaintiff in the above-styled case.  I

have personal knowledge of the facts asserted herein.

1.      "On January 22, 2005, at approximately 2:30 p.m., I was involved in a

physical altercation with several individuals, including William Wayne Allen,

Michael Wayne Allen, Crystal Marie Allen and Elbert Eugene 'Gene' Allen.  The

altercation took place at my home at 1710 White's Gap Road, Jacksonville,

Alabama.

2.      "Michael Wayne Allen attacked me first.  Michael Wayne Allen used a

weapon, I assumed it was an iron pipe, and struck me on my head and legs.

Thereafter, I was continually attacked by the four Allens.

3.      "Sometime after the fight was broken up, I told Officer DeShon to retrieve

1



EXHIBIT
A

Mar 30 07 01:09p    Joe Clements                256 782  1594                p.3

Mar. 28. 2007  3:11PM                                          No. 6650  P. 3

the weapon that Michael Wayne Allen used on me. DeShon picked up the weapon
and threw it into the bushes and said, 'What weapon?'

4.    "After the fight was broken up, my wife, Tamera Prince, was trying to help
me to an ambulance that had arrived. She was walking me toward the ambulance
not toward my home. Officer Freeman grabbed me by my arm and tried to shove
me into his police car. I fell down, while Freeman was trying to get me into his
police car. Freeman attempted to get me into his car a few times, shoving me into
his car and then I would fall on the gravel on the ground. I kept telling Freeman
that I was hurt and I could not sit in a seat. Freeman kept telling me, 'Sit down,
you're not hurt. You're not hurt.' My wife kept picking me up off the ground,
trying to help me.

5.    "After the fight was broken up and my wife was helping me up and to the
ambulance, I saw Sergeant Harris still standing at his vehicle. I also saw that
Harris was smiling and laughing. I also saw Officer DeShon smiling and
laughing.

6.    "Officer DeShon said to me that 'there isn't anything wrong with you. You
don't need to go to the hospital.' DeShon then stated, 'put Mr. Allen in the
ambulance, because if Prince needs to go to the hospital, he can drive himself.'

7.    "Officer Freeman asked who my wife was. My wife answered that she was

2

P.2/2                        90299226:0L                     Є82LƐZ59Z१L            TSԀOЯԀ:woɹℲ 9S:90 २002-४L-४АW

Tamera Prince. Freeman then asked her for identification. After my wife gave

Officer Freeman her driver's license, he threatened to arrest her for giving him

false information. My wife's maiden name, not her married name, is on her

driver's license.

8.      "Finally, the ambulance driver interrupted Officer Freeman, telling him,

'We need to go to the hospital. He's [Steve Prince] hurt bad.'

9.      "I never told Officer Freeman that I had cut the ear of one of the Allens.

10.     "I was arrested for this incident by the City of Jacksonville Police

Department after I was discharged from the hospital. I was in the hospital for two

weeks as a result of this beating.

11.     "Previous to this incident, I had sued the City of Jacksonville regarding

Sergeant Harris' conduct."

        Pursuant to 28 U.S.C.A.§ 1746, I declare under penalty of perjury that the

foregoing is true and correct.

        Executed on this the __2 8__ day of March, 2007.

                                    _Steven Lynn Prince_
                                    STEVE PRINCE

3